May it please the court good morning my name is Christina Sircone and I represent petitioner Ngoli Nyirenda pro bono. I would like to reserve two minutes for rebuttal. Mr. Nyirenda, a Zambian gay man has been ordered removed from the United States, his home for the past 28 years, to Zambia, a country that criminalizes same-sex sexual conduct and is notorious for its culture of widespread violence against sexual minorities. Here the BIA committed reversible error by applying standards more stringent than the regulations dictate when it required evidence of gross flagrant or mass violations of the rights of LGBT individuals in Zambia and required Mr. Nyirenda to provide evidence that his past torturers are still looking for him today nearly 30 years later. The BIA also committed reversible error by failing to fulfill its regulatory obligation to consider all of the relevant evidence in determining whether Mr. Nyirenda is more likely than not to be tortured upon his return to Zambia. Cole v. Holder makes it clear that quote where there is any indication that the BIA did not consider all of the evidence before it, a catch-all phrase does not suffice and the decision cannot stand. Had the BIA applied the correct legal standards to the entirety of the uncontroverted record, the substantial evidence compels the conclusion that it is more likely than not that Mr. Nyirenda will be tortured upon his return to Zambia. Similar to the record in government not only acquiesces in the torture of gay men, it participates in such torture. I'd like to focus on the BIA's use of the legal standards here. The regulation requires that the BIA consider all of the evidence relevant to the possibility of future torture, but it does not specifically require evidence of gross flagrant or mass violations of the human rights of LGBT individuals in Zambia. What makes you think that was the standard the BIA applied? Because the BIA quotes that Mr. Nyirenda did not prove gross flagrant or mass violations of rights of LGBT persons in Zambia. Sure, but that was in a section of the decision that was discussing the evidence. The standard was I think properly articulated two paragraphs higher on the page, wasn't it? I mean so the respondent has not demonstrated he is more likely than not to be tortured by or with the consent or acquiescence of a public official upon his return to Zambia. Is that an accurate statement of the standard? That is. So the BIA recognized what the standard was and then it starts discussing evidence. The next couple paragraphs are about the particulars of your client's case, which entirely, as I can tell, I should pose this question. Is there anything other than the fact that he's identified and in Zambia as a member of the LGBT community? Is there anything else that your client presents to say why he's at risk? Mr. Nyirenda has been an openly gay man for over 20 years now and he... My point is that's his complaint. It's not like and also I've got this political belief that adds to the reason I'm going to face difficulties when I'm sent back. But just being an openly gay man in Zambia, he is at risk of torture, not only... I'm not disputing that for the moment, but so the BIA approaches this as a LGBT case and it states the standard and then it starts talking about the treatment of the LGBT community in Zambia. You have inferred a standard applied by the BIA that I'm not sure that the decision itself actually reflects as the standard as opposed to a discussion of the standard. Our position is that the BIA relied on this one factor in what it needed to consider in deciding whether or not it's more likely than not that he would be tortured and took that one factor and made it this positive test. It seems like you have two arguments. So that argument you also made that they turned one factor into a dispositive factor. You also though I thought had an argument that instead of looking at all, I don't know the language, all outrageous contact with flagrant violations, they looked at just flagrant violations of LGBT individuals. And I understood Judge Clifton to be asking about the second and why that's improper when he has to show a particularized risk and that is his claim. Correct. Well let's say he is the first LGBT person to be tortured in Zambia. If that standard focusing on mass gross violations of LGBT individuals, he wouldn't be able to prove that. He might be able to prove that there are mass violations going on on human rights, you know, against women and that is relevant according to the regulation. Any mass gross or flagrant violations of human rights in the country of removal is relevant to the inquiry. But does it speak to his fate? His argument, he has to demonstrate that the evidence compels the conclusion that more likely than not, he will suffer torture upon return. As I've reviewed the very well-prepared papers, his case rests entirely upon the fact that he's openly gay. So the fact that there is abuse of women in Zambia really doesn't speak to him. He doesn't purport to be but he has to make a case that relates to him and what is it that compels the conclusion that he, more likely than not, will be tortured. Mr. Nyrenda presented a mountain of evidence showing that it's showing the substantial evidence that it's more likely than not that he will be tortured. Focusing just on torture by Zambian officials, the State Department report that was submitted before the IJ and reviewed by the BIA does say that some of the most egregious offenses are happening by Zambian officials and they include unlawful killings and torture. Mr. Nyrenda, as an openly gay man, may be prosecuted because same-sex sexual conduct is an offense. Well, but the numbers that were offered up are double-digit numbers and Zambia has a population of millions. I don't know what proportion of the population is gay or openly gay, but 28 prosecutions don't suggest more likely than not that greater than the percent of the population that is openly gay. If you are living in a country that criminalizes who you are for up to 14 years of imprisonment, I'm pretty sure a lot of people are going to be hiding. But what in the record answers that question? I mean, I can speculate, but do we know that the openly gay population is 10,000, 1,000, 100? What do we know? We don't have those numbers, but the important thing is that the State Department country report that was submitted before the IJ showed an over 100% increase in the enforcement of this law. But to what number? And how can we tell that's a greater than 50% figure? We don't need to tell that that alone is a greater than 50% figure because... No, we've got to add the pieces up to something greater than 50%. And I share your concern, but you're going to have to identify evidence that compels the conclusion of greater than 50%. And that's just... Well, here, the BIA cherry-picked evidence to support its conclusion and to the BIA in referring to what happens to these LGBT individuals as mere discrimination, they ignored a mountain of evidence that Mr. Nyrenda put before the committee. And that is the violence and torture that these LGBT individuals face in Zambia. This includes mob violence. People are beaten and left for dead by members of their community because they are gay. People are raped because they are gay. Family members even try to, quote, beat the gay out of their family members who are gay and lesbian. And these victims can't go report these attacks to the police because they are afraid that they are going to be arrested. And that is not the case in the State Department country report. Another example of the BIA cherry-picking evidence is using a comment from the First Lady, which completely mischaracterizes the record and ignores all of the other statements from actual elected officials, including the current president, her husband, who stressed that the government would be monitoring any advocates for LGBT rights and would not hesitate to arrest them. Do you have evidence that when they are arrested, they are tortured? So the State Department country report does have reports that detainees, whether or not they are LGBT individuals, are tortured. And the country report does point specifically to anal examinations as procedures that are used to detainees who are gay. And the State Department country report does have reports that detainees are tortured for consensual same-sex sexual conduct. And both Amnesty International and the Human Rights Watch refer to this as forms of torture because they are just scientifically invalid as forms to prove that someone had engaged in same-sex sexual conduct. When taking, oh, I see that my time has passed. Thank you. And we'll hear from the Attorney General. I guess you're not really the Attorney General, but close enough. Not today. Good morning. May it please the Court. Vanessa Otero on behalf of the Attorney General. I take it that Your Honors don't want to take any questions that we've made in our brief and in our motion on that question. So turning to the merits, substantial evidence supports the agency's finding that Petitioner has not shown that it is more likely than not that he will be tortured by or with the acquiescence of a public official in Zambia. Simply stated, he hasn't demonstrated that it is more than likely the 50% chance that he will be tortured on account of his sexual orientation or for any other reason. There are two reasons why the agency's finding this correct. The first being that there is no evidence whatsoever of past torture. And the second being that there's no evidence of the gross or mass violations of the LGBT community in Zambia. Now, both of these categories of evidence are, the Board is mandated to discuss and consider both categories of evidence in determining whether there's a likelihood of future torture. That's found at the regulations and in this Court's decision in Konu v. Holder. Now, nothing in the record here compels a petitioner to point to the fact that on the issue of past torture, it's... So could the agency have looked at this record and found there was a likelihood of torture? On this particular record, Judge Friedland, no. It couldn't have. As far as putting aside the question of past torture, for example, the only thing that Petitioner has pointed to here that he claims is relevant to that issue is the fact that anal exams are violating the same-sex sexual activity laws. Council mentioned earlier that the evidence suggests that some people are raped because they're gay. I don't see that pointed out in their brief, and I'm not aware of that being in the actual record. She also mentioned that there's evidence that people are beaten by their families because they're gay. Also, again, I don't remember that in their brief, and I don't know where that is in the record. So another thing they point to is, they point to one article from Amnesty International. I think that's at page 210 of the record, where it says police carried out, quote-unquote, homophobic attacks. Now, there are no more specifics about what those attacks entail, so we're not... There's no way we can know whether those attacks rise to the level of torture, which includes severe mental or physical pain or suffering. Council also pointed to the fact that an article that says that most officers fall prey to their own prejudices when discharging their duties. Again, discrimination isn't torture, and we don't know what that means as far as what these officers are doing against people who are suspected of violating these laws. The point Council makes about... They rely heavily on the fact that at the outset of the country report, there's a sentence that says police frequently use excessive force, including torture, when apprehending criminal suspects. Now, there's nothing to suggest here that this petitioner will be arrested in connection with these laws, and there's also nothing to suggest here that even if he were arrested, that he would be subjected to torture as a result. Even if he were arrested and were detained for having violated this law, there's nothing to suggest that any torture would happen to him or anything rising to the level of severe mental or physical pain. Well, the country report does have a section that specifically discusses the burdens placed on the... I guess the term... I guess they do use LGBT community, sexual orientation and gender identity, and it is a criminal offense in Zambia. There have been prosecutions, and I come back on the other side for the same quandary I had before. If there are not insubstantial number of prosecutions and the number is growing, and I suspect the openly gay community isn't so large, how can you say that there's really no evidence that he's at risk of prosecution if he returns to Zambia? Well, it's not more likely than not that he's going to be arrested in connection with the law. As you pointed out earlier, Judge Clifton, we're talking about maybe 23 cases brought under that law. But maybe there are only 30 openly gay people in Zambia. How do we know? It's true. We don't know. It's a country of roughly 15 million people, but even if he were to be arrested in connection with that law, an arrest in and of itself isn't torture. So is there any evidence... But then there's this... Even the BIA opinion talks about... It doesn't talk about problems in jail. Isn't there a notion that people are treated very badly in prison and possibly tortured? Yes, that's correct. But under the regulations, in order for that to constitute torture, it has to be specifically intended to inflict pain and suffering. In other words, just because prison conditions are bad in Zambia, that doesn't mean that the authorities have put those conditions in place in order to specifically inflict pain and suffering. Now this Court discussed that... I'm not sure... I mean, where does the intent requirement come from? It comes from the regulations, Your Honor. In 8 CFR Section 1208.1885, it says that. Also, this Court's decision in Villegas v. Lucchesi, a decision from 2008, says that an alien, quote, must show that severe pain and suffering was specifically intended. The actor intended the actual consequences of his conduct as distinguished from the act that causes the consequences. Now in that case, Villegas, I think it was an alien who had mental illness. He was going to be returned to, I can't remember which country. And his argument was similar in that he said, well, if I go back to the country and they put me in a mental institution, mental institutions there are horrible, and I'm going to be tortured as a result, as a result of those... the way that the institutions were set up. And the Court said that that's not enough. You have to show that the authorities specifically intend to torture people who are in the institutions, that they create the circumstances in order to torture people. I mean, the BIA opinion talks about the human rights abuses in Zambia and killings, torture, beatings, and then talks about prison conditions. So there's nothing in this record that I see that to the extent those... to the extent there may be something that could count as torture, intent doesn't seem to be the problem. And we have no indication that there's, like, people hitting their heads on the prison walls by accident or something. Correct, Your Honor. There's nothing to suggest that there is... There's no evidence in this record to show that any of these prison conditions were set up or specifically intended to inflict torture on anyone, whether it be someone arrested under a different law or someone arrested under the law that Petitioner is claiming he will be. And without that, he simply hasn't satisfied the standard for a finding of future torture. So your opponents made two arguments, I think, about the error they claim the BIA made in the application of the standards. I didn't really see you respond at least to the one where they say that they made this factor dispositive. So the evidence of gross, flagrant, or mass violations of human rights, they argue that the agency readied the lack of that standard as dispositive when it really should have been one factor among many. I didn't see a response in your brief to that, and I'm wondering whether you have a response. Your Honor, respectfully, I disagree. We did respond to that. I think their point was that the agency should have considered mass violations as a whole in Zambia rather than mass violations. Well, I think they made two arguments, and on page 23, I think they made a different form of the argument, which is that the agency treated one factor as dispositive when it's not supposed to be a dispositive factor. And I'm wondering what your response to that is. Well, my response to that is that the agency didn't do that. What they did was consider that generally human rights violations in Zambia, there are some. And then secondly, as Judge Clifton pointed out, they went in to discuss the evidence to see whether or not, as they're bound to, whether or not those gross violations of human rights pertain specifically to the LGBT community in Zambia, which is relevant to Petitioner's claim here. Now, whether or not that's a dispositive test, to be honest, I don't really even understand what that argument is. The legal standard here is whether it's more likely than not that he's going to be tortured. The fact that the agency's considering the relevant evidence, which is relevant to the likelihood of future torture, doesn't make it a dispositive test. What they're doing is connecting the dots and saying, here we have some human rights violations, now let's see if there's any evidence of those violations relevant to this particular applicant's claim. We made that general argument in our brief and basically pointed out the fact that the agency didn't err by considering the gross or mass violations of the LGBT community in general, or rather in particular, because under Walker v. Holder, an applicant must provide some reason to think that he's likely to be tortured by the act of his fears. So, to be honest, I believe that we did address that argument and I don't know that her argument is, it doesn't really accurately reflect what the Board did here. Unless the Court has any other questions, I'd like to conclude. So, for the reasons stated in our brief, and for those presented here, the government's position is that the position for review should be dismissed, or in the alternative, it should be denied. Thank you. Thank you. Thank you. I'll try to be brief since I ran over. I do want to give the administrative record citations for the rape and beatings that I gave, and that is at the administrative record, page 256 and 322. I'd also like to focus on the enforcement issue we were discussing earlier. Cases in the Ninth Circuit where cat relief has been denied, there have been zero cases of enforcement of laws. That is not the case here. We have evidence of the 23 that you called, but 23 is 23 too many, and the evidence shows that the numbers should be increasing. But the standard is more likely than not. I mean, if he were eligible for asylum, this is probably a pretty easy case, but he's not. And so we have this intentionally high standard. And so to tell me if it's not zero, he wins, that's just not what the law says. But the more likely than not standard goes to all circumstances. No, it goes to this person. This person's fate has to be more likely than not facing torture. And what is there other than his LGBT status? Without a doubt, it has to be more likely than not his risk. But his risk comes not only from government actors, but also private actors at the acquiescence of the government. And Mr. Nyrenda showed past torture that he experienced, not only physical, by being chained to a bench and beaten, but also mental torture. He was systematically stalked. He was threatened that they were going to out him to his community, which would have been a death sentence. And they even threatened his imminent death, going so far as to show him a dead body in the trunk of a car. And it only stopped for him because he fled the country. Did he make the mental torture argument below? Yes, he did. And if I could give the brief citation, it would be the administrative record, page 12. And so, because of the evidence supporting Mr. Nyrenda's CAT claim compels one conclusion and is unrebutted, we respectfully request this court grant Mr. Nyrenda's petition for review and hold that he is entitled for deferral of removal. At a minimum, we request that this court grant the petition and remand to the agency for the application of the proper legal standards to the entire uncontroverted record. Thank you very much. Thank you. We thank both counsel for your very helpful arguments. And we thank you and your firm for taking the case on a pro bono basis. And we thank you for your government service. With thanks all around, the case just argued is submitted.
judges: Fernandez, Clifton, Friedland